IN RE ESTATE OF WILLIAM HENRY AUSTIN.

WILLIAM AMMONS, Appellant, v. BELVA BRANSON AUSTIN, Administratrix with will annexed, Appellee.

No. 46729.

NOVEMBER 13, 1945.

 █ 

Korf & Korf, of Newton, for appellant.

O. H. Allbee, of Marshalltown, for appellee.

GARFIELD, J.— The facts were stipulated. William H. Austin died in September 1943. His will, made in February 1940, was probated and his widow by a second marriage (consummated in November 1940) was appointed administratrix with will annexed. By a prior marriage the testator had one daughter, Mabel Austin, who died in August 1940, unmarried and childless. Mabel's mother died in March 1939.

Austin's will bequeaths a life estate to Mabel, together with so much of the principal as may be necessary for her care and support, and provides that if he should marry, his wife shall receive her distributive share in his estate as provided by the laws of Iowa. The residuary clause is a bequest of the "rest and remainder of my estate * * * to the heirs-at-law of my daughter, Mabel Austin."

The administratrix filed application in probate for the construction of the residuary clause. William Ammons, a brother of Mabel's mother (testator's first wife) and her sole surviving heir, answered the application and claimed half the residuary estate on the theory that the heirs of Mabel should be determined at the death of testator. Since Mabel left no issue or spouse and her parents were dead when the will took

effect, William Ammons contends her heirs are to be determined, under section 12025, Code, 1939, as if her parents had outlived Mabel and died in the ownership of the residuary estate. Thus Ammons would be entitled to the half share that would have gone to Mabel's mother had she survived her daughter; the remaining half would go to the heirs of Mabel's father, the testator.

The administratrix contends the heirs of Mabel are to be determined at the time of her death. It is apparent that at her death the testator himself was Mabel's sole heir. Section 12024, Code, 1939. Since the testator died before the will took effect, the administratrix argues the class was eliminated and the residuary estate passed as intestate property to the testator's heirs. (The testator left, aside from his widow, a brother, three sisters, two nieces, and a nephew.) The trial court adopted this theory and rejected the claim·of William Ammons, who has brought this appeal.

It is apparent the principal question is the time for ascertaining who are Mabel Austin's heirs. Technically, the heirs of a person are those upon whom the law casts the estate immediately on the death of the ancestor. Slavens v. Bailey, 222 Iowa 1091, 1095, 270 N. W. 367, and authorities there cited; 39 C. J. S. 881, 882; 69 C. J. 207, 208, section 1242; 3 Page on Wills, Lifetime Ed., section 1009. Appellee administratrix contends this is the meaning which must be given the term ''heirs at law'' in the will in question.

Appellant Ammons argues that this technical meaning should not be given the term ''heirs at law'' here because the will did not become effective until the testator died and the time of determination of Mabel's heirs should not precede the time when the will took effect. Much is made, too, of the incongruous result of the theory adopted by the trial court by which the testator himself became the beneficiary under the residuary clause.

For the most part, the cases cited by appellee involve a gift to a third person for life, then to his heirs, where the life tenant survives the testator, and it is held that the heirs are to be determined at the death of the life tenant and not the testator. Involved in such decisions is the fact that the life

tenant has no heirs until he dies, since, as frequently said, no one can be heir to the living. Or, as many of such cases state, the heirs of a person cannot be ascertained until his death. It is apparent that such cases present a different situation than exists where the life tenant dies before the instrument takes effect.

Appellee concedes that if Mabel Austin had left heirs at her death, but some of them had predeceased the testator, only those who survived the testator would benefit from the residuary clause. She says:

"If, on the death of Mabel, the class had consisted of A, B, and C and on the death of her father B. and C had already died, the class would be A * * * The gift of the residuary clause is a gift to a class. That class could have included A, B, C, and D. A could have died before the testator. On the testator's death the class would have been those who remained of A, B, C, and D, to wit, B, C, and D."

We hold, contrary to the trial court's decision, that the heirs of Mabel are to be determined at the time of testator's death, when the will took effect. There are certain widely recognized rules of construction which have some application here. A will should be so construed, if fairly possible, as to avoid even partial intestacy. Kalbach v. Clark, 133 Iowa 215, 222, 110 N. W. 599, 12 L. R. A., N. S., 801, 12 Ann. Cas. 647; Creel v. Hammans, 234 Iowa 532, 534, 13 N. W. 2d 305, 307; Myers v. Smith, 235 Iowa 385, 393, 16 N. W. 2d 628, 632, 155 A. L. R. 1413; 69 C. J. 91, section 1147. The presumption against intestacy is particularly strong where the subject of the gift is the residuary estate. 28 R. C. L. 227, 228, section 189. A residuary bequest is designed to dispose of that not otherwise disposed of. In re Estate of Hartman, 233 Iowa 405, 410, 9 N. W. 2d 359, 363. Another rule, closely related to the presumption against intestacy, is that if a testamentary provision is open to two constructions, one of which would render it inoperative and another which would render it valid, the latter is always to be taken and the former rejected. Jensen v. Nelson, 236 Iowa 569, 571, 19 N. W. 2d 596, 598, and authorities there cited.

Of course, the primary concern of courts is to determine the intent of the testator and give it effect unless contrary to some rule of law or public policy. And the purpose of all rules of construction is merely to aid in the determination of such intent. In re Estate of Edwards, 231 Iowa 71, 72, 77, 300 N. W. 673, 674, 676, and cases cited; Smith v. Harris, 227 Iowa 127, 134, 287 N. W. 255.

Under varying circumstances, courts frequently do not apply the technical meaning of the word "heirs." It is a flexible term and the meaning to be given it is a question of the testator's intent. Slavens v. Bailey, supra, 222 Iowa 1091, 1095, 270 N. W. 367; Kalbach v. Clark, supra, 133 Iowa 215, 222, 110 N. W. 599, 12 L. R. A., N. S., 801, 12 Ann. Cas. 647; Furenes v. Severtson, 102 Iowa 322, 325, 71 N. W. 196; 39 C. J. S. 881, 882, 883; 69 C. J. 247, section 1268.

Appellee relies upon section 308, Restatement of the Law, Property, to the effect that when a gift is in favor of the heirs of a designated person (here Mabel Austin), the statute on intestate succession is applied as of the death of the designated ancestor, unless an intent of the testator to have the statute applied as of some other date is found from additional language or circumstances. A similar statement appears in 69 C. J. 266, section 1280. So far as we can find, in the cases which announce such a rule the designated person outlived the testator and the contention was made that the heirs of the designated person should be determined before he died—at the testator's death. As heretofore intimated, such a contention has usually been rejected. But the authorities appellee cites make it plain that the rule contended for does not apply under such facts as we have here.

69 C. J. 266, section 1280, states:

" * * * but, under a gift to a third person for life and then to his heirs, next of kin, or the like, the class meant is ordinarily held to consist of those persons answering the description as of the life tenant's death, *where the named life tenant outlives the testator* * * * Of course, where the designated life tenant dies after the will is executed but in the testator's lifetime, the class contemplated is that existing as of the

testator's death, unless an intention to the contrary is manifested in the will.'' (Italics supplied.)

Comment 1 under section 308, Restatement of the Law, Property, reads:

''Contrary intent — Postponing statute's application — Death of ancestor before effective date of conveyance. The fact that the designated ancestor [here Mabel Austin] dies before the date on which the conveyance takes effect tends to postpone the application of the statute on intestate succession until the date on which the conveyance takes effect. When such is the fact it is reasonably inferable that the conveyor does not intend the language of the dispositive instrument to be effective to ascertain the takers as of a date prior to the date on which the conveyance takes effect, unless a contrary intent is found from additional language or circumstances. See §309, Comment e and §230, Comment e.''

Comment e under section 309 of the Restatement, so far as applicable here, and illustration 5 thereunder state:

''When the designated ancestor predeceases the effective date of the dispositive instrument, the described group is not ascertained by the application of any statute governing the intestate succession of property until the date the instrument takes effect in the absence of a contrary indication of intention (see §308, Comment 1 * * * ).

''Illustrations: 5. A, owning Blackacre in fee simple absolute, makes an otherwise effective devise thereof 'to B for life then to the heirs of C.' C is the designated ancestor. C dies. Under the applicable local law, the heirs of C at his death are his children D and E. D and E die, each being survived by a wife who, pursuant to the terms of the lapse statute, would be entitled to receive any interest given to her husband, if the lapse statute is applicable to this limitation. A dies. Under the applicable local law, the heirs of C as of the effective date of the dispositive instrument are F and G, his brother and sister. F and G have indefeasibly vested remainders in Blackacre. The otherwise applicable lapse statute is prevented from applying because the members of the described group are not ascertained

by the application of any statute until the effective date of the dispositive instrument."

Comment e, under section 230 of the Restatement, insofar as applicable here, and illustration 4 thereunder are as follows:

"e. Succeeding interest to heirs or next of kin. When the attempted prior interest fails in the manner stated in this Section* and the succeeding interest is, in terms, limited to the heirs or next of kin of the person to whom such prior disposition is limited * * * then the takers of the succeeding interest are ascertained as of the date when the conveyance becomes operative rather than as of the other and different date upon which the duration of the attempted prior interest was stipulated to end. The failure of the prior interest causes the takers of the succeeding interest to be ascertained as of a date later than that normally designated by the language of the conveyance. * * *

"Illustrations: 4. A, owning Blackacre in fee simple absolute, makes an otherwise effective devise of Blackacre 'to my son B for life and at his death to B's legal heirs.' B dies survived by a son C who is his sole descendant and heir. C dies, having effectively devised everything subject to his testamentary power to his wife D. A [the testator] dies. If B had died as of the moment of A's death, B's legal heir would have been a brother E. E has a possessory estate in fee simple absolute in Blackacre."

The authorities from which we have quoted—and appellee herself has cited them to us—squarely support the position of appellant. Clearly the life estate to Mabel Austin failed because she predeceased the testator. While it is true that at Mabel's death the testator was her sole heir, there was then no estate to be cast by succession upon her surviving father. The estate did not come into being until the testator died. When such event occurred, the testator, of course, could inherit nothing because he was dead.

There is no language in the will and no circumstances are

---

*(i.e.. "because it is, in terms, created to last for a restricted time only, which time has expired at or prior to the time when the conveyance becomes operative.")

shown that indicate the testator intended the takers under the residuary clause to be ascertained as of a date prior to the time the will took effect or the estate came into existence. Furthermore, if such takers are to be determined as of such prior date (i.e., at Mabel's death), the testator himself was the only taker. Surely the testator intended no such incongruous result. He, of course, knew the will would not take effect until he died. He could hardly have intended that membership in the class which was to take under the will should be determined as of an earlier date.

The effect of the trial court's decision is that the residuary bequest entirely fails because of the failure of the life estate due to the death of the life tenant in the testator's lifetime. We find no basis for the belief that the testator intended the residuary clause to be ineffective merely because the life estate failed. While the testator may have intended that the heirs of Mabel Austin should be determined as of her death, *if she survived him,* there is nothing to indicate that he intended they should not be determined at all if he survived her. See Matter of Fordham (Cardozo, J.), 235 N. Y. 384, 139 N. E. 548, which squarely supports the conclusion we have reached.

The interpretation we have given the will upholds its validity and avoids the result of intestacy. We think it more nearly carries out the intent of the testator than the holding of the trial court that the class who are to take the residuary bequest should be determined as of a time prior to the taking effect of the instrument containing the bequest and at a time when the testator himself was the only member of the class. We have a right to assume that the testator intended his residuary estate to go to the heirs of Mabel Austin and not to his own heirs, to whom it passes if it is held to be intestate property. If he had desired his own heirs to be beneficiaries, of course the testator could have easily so provided.

Our decision is supported, in addition to the authorities above cited, by 3 Page on Wills, Lifetime Ed., section 1055, where it is said:

"If the gift is to the 'heirs' or 'next of kin' of one other than testator, the time as of which such class is to be deter-

mined depends, in the absence of a definite indication of testa-tor's intention, upon the time of the death of such other person with reference to that of testator. If such other person dies before testator, his heirs or next of kin are to be determined as of the death of testator * * * ."—Reversed.

All JUSTICES concur.