LaVerna HOLLENBECK, Executrix of the
Estate of Mabel L. Meibergen,
Deceased, Appellee,

v.

John R. GRAY, Bernice Holmes, Sister Aud-
rey Gray, Mary Lou Driskill, Charles H.
Gray, James W. Gray, Caroline Johnson
and Elaine De Spain, Appellants.

No. 54308.

Supreme Court of Iowa.

April 9, 1971.

Crary, Huff & Yates, Sioux City, for appellants.

R. Michael Sweesy, Mason City, for appellee, LaVerna Hollenbeck Executrix.

Finley & Teas, Mason City, for appellee, Easter Seal Society for Crippled Children and Adults of Cerro Gordo County, Iowa.

Laird, Burington, Bovard & Heiny, Mason City, for appellee, Cerro Gordo County Tuberculosis and Health Assn.

James O'Donohue, New Hampton, for appellee, American Cancer Society, Iowa Division, Inc.

Ray E. Clough, Mason City, for unknown claimants.

LeGRAND, Justice.

This de novo appeal involves a dispute over the meaning of Paragraph III(q) of the Last Will and Testament of Mabel L. Meibergen, who died December 30, 1966. Her executor filed a petition for construction of the will because of uncertainty as to the identity of four legatees named to share equally in the residuary estate. Prior to trial the parties stipulated that the Winnebago Council of the Boy Scouts of America was entitled to take under the will, and we are concerned here only with the remaining three residuary legatees.

The disputed portion of decedent's will is as follows:

"III. Subject to the provisions of Paragraphs I and II hereof, I will and direct that my executrix hereinafter named shall take full and complete charge of all the rest, residue and remainder of the property, both real and personal, of which I die seized and possessed immediately upon my death and as soon as practicable thereafter to reduce all of said property to cash, and to make distribution of the same, after the payment of all taxes and costs of administration, in the following manner and to the following persons, to wit: * * * (q) All the rest, residue and remainder of said property shall be distributed to the following organizations in the following proportions, to wit: To the Cerro Gordo County Society for Crippled Children, of Mason City, Iowa, one-fourth (¼) thereof; To the Winnebago Council of the Boy Scouts of America, of Mason City, Iowa, one-fourth (¼) thereof; To the Cerro Gordo County T.B. and Heart Association, of Mason City, Iowa, one-fourth (¼) thereof; To the Cerro Gordo Cancer Society, of Mason City, Iowa, one-fourth (¼) thereof.

"I hereby state that it is my express intention that the bequests made in sub-paragraph (q) above are being made to the governing boards of said local organizations to be used by them in the area served by them as they may deem appropriate and proper to carry out their express purposes; and it is my intention that no part of any such bequest shall be paid into any national organization of which such local group or chapter may be a part, but shall be used in such manner only as may be determined by the local governing board of each of such groups or organizations."

The trial court found that the share designated in the will for Cerro Gordo County Society for Crippled Children, of Mason City, Iowa should go to Easter Seal Society for Crippled Children and Adults of Cerro Gordo County, Iowa; the share for Cerro Gordo County T.B. and Heart Association, of Mason City, Iowa, should go to Cerro Gordo Tuberculosis and Health As-

sociation; and the share for Cerro Gordo County Cancer Society, of Mason City, Iowa, should go to American Cancer Society, Iowa Division, Inc. Various heirs of Mabel L. Meiberger appeal. We affirm the trial court.

The heirs rely on these propositions for reversal:

(1) There is no ambiguity or uncertainty in the will and therefore rules of interpretation may not be resorted to in determining testator's intent;

(2) The trial court erred in admitting extrinsic evidence to aid in the construction of the will; and

(3) The court erred in failing to find the bequests lapsed because there were no charitable beneficiaries to take under subparagraph (q) of Paragraph III of the last will.

I. Our task is to ascertain and give effect to the intention of the testator. We have considered the rules under which we decide such cases many times, and they have been discussed several times recently. In re Estate of Larson, 256 Iowa 1392, 1395, 131 N.W.2d 503, 504; In re Estate of Lamp, Iowa, 1969, 172 N.W.2d 254, 257; and In re Estate of Staab, Iowa, 1970, 173 N.W.2d 866, 870, 871.

■ We must consider the trial court's conclusions keeping in mind the following principles announced in those opinions: (1) the testator's intent is the polestar and must prevail; (2) the intent must be gathered from a consideration of all the language of the will, the scheme of distribution, and the facts and circumstances surrounding the making of the will; and (3) technical rules of construction should be resorted to only if the language of the will is clearly ambiguous or conflicting or the testator's intent is for any reason uncertain.

■ We should also remember two other rules applicable here. One is that

provisions for charitable purposes, such as those here under consideration, should be sustained if at all possible. Jensen v. Nelson, 236 Iowa 569, 571, 19 N.W.2d 596, 598; Eckles v. Lounsberry, 253 Iowa 172, 177, 111 N.W.2d 638, 641. The other directs that a will be construed, if fairly possible, to avoid even partial intestacy, particularly when dealing with a residuary gift. In re Estate of Austin, 236 Iowa 945, 948, 20 N.W.2d 445, 447; In re Estate of Lamp, supra, 172 N.W.2d at page 259; In re Estate of Fairley, Iowa, 159 N.W.2d 286, 289.

■ As pointed out in the Lamp case, each controversy of this nature is largely dependent upon its own peculiar facts and circumstances. Previous decisions are helpful only as they establish general guidelines by which we ascertain the intention of the particular testator. In re Estate of Lamp, 172 N.W.2d at page 257.

Defendants argue that the provisions of Paragraph III(q) are clear and unambiguous; that the intended beneficiaries are definitely named; that such beneficiaries did not exist; that the court is limited to the language of the will itself and cannot consider extrinsic evidence to determine the testator's intent; and that therefore the bequests should lapse and the property should go under the rules of intestacy.

The executor, on the other hand, urges there is a latent ambiguity in the will arising because the testator imprecisely designated those who were to take her residuary estate; that extrinsic evidence is admissible to ascertain the intended objects of her bounty; and that, when such evidence is considered, the intention of the testator is clear and unmistakable.

■■ It is generally held a latent ambiguity arises when no claimant exactly matches the name given in the will. Such ambiguity may exist not only when two persons claim to be the intended beneficiary but also when uncertainty arises because of misnomer or misdescription which,

without extrinsic evidence, would fit no one. Extrinsic evidence is then admissible to determine who was intended by the language used. Redd v. Taylor (1967), 270 N.C. 14, 153 S.E.2d 761, 766; In re Estate of Lutzi (1963), 266 Minn. 294, 123 N.W.2d 618, 624; Norton v. Jordan (1935), 360 Ill. 419, 196 N.E. 475, 479; Carney v. Johnson (1967), 70 Wash.2d 193, 422 P.2d 486, 488; In re Morrison Estate (1965), 106 N.H. 388, 211 A.2d 904, 906; 4 Page on Wills (Bowe-Parker Revision), section 32.6 pages 248–252 and section 34.39, page 480. 95 C.J.S. Wills § 641, page 937; 57 Am.Jur., Wills, sections 1063, 1064, pages 688, 689.

Several of our own cases support this rule. In re Estate of Stuart, 184 Iowa 165, 170, 168 N.W. 779, 781; In re Estate of Durham, 203 Iowa 497, 502, 211 N.W. 358, 361; and Widney v. Hess, 242 Iowa 342, 352, 45 N.W.2d 233, 239.

Our opinion in In re Estate of Stuart, supra, includes the statement that extrinsic evidence is admissible "to identify the party to whom the bequest is made." And in In re Estate of Durham, supra, we said, "Extrinsic evidence is admissible to aid in the construction of a will and to identity the beneficiary intended. * * *"

■ We believe the trial court properly considered extrinsic evidence in determining the intent of the testator and in identifying the beneficiaries entitled to take under the language used in Paragraph III(q).

With the foregoing rules in mind, we consider the bequests separately:

■ II. *Cerro Gordo County Society for Crippled Children of Mason City, Iowa.* When decedent executed her will on August 8, 1961, there was no society answering exactly to the name used in that instrument. However, there was an organization known as Cerro Gordo County Society for Crippled Children and Adults. On January 31, 1967, after decedent's death, the name of this organization was changed to Easter Seal Society for Crip-

pled Children and Adults of Cerro Gordo County, Iowa. Certainly this change in name after the testator's death is of no importance (In re Estate of Hagan, 234 Iowa 1001, 1008–1009, 14 N.W.2d 638, 642), and the real dispute centers around the omission of the words "and Adults" from the name used in the will.

We agree with the trial court that it would be a clear violation of the testator's intent to hold this gift should fail because of this insignificant variation in designating the beneficiary.

We hold that the testator's intent to designate the Cerro Gordo County Society for Crippled Children and Adults, now known as the Easter Seal Society for Crippled Children and Adults of Cerro Gordo County, Iowa, is clear beyond reasonable dispute.

■ III. *The Cerro Gordo County T.B. and Heart Association of Mason City.* The trial court found the correct name of this organization, both at the time the will was executed and at the testator's death was Cerro Gordo Tuberculosis and Health Association. The trial court also found no other organization in Cerro Gordo County could take under this bequest; that there was no organization known as the Cerro Gordo County T.B. and Heart Association; and that the Cerro Gordo County Tuberculosis and Health Association is the only organization in Cerro Gordo County satisfying the testator's intent in making the bequest. We hold the trial court properly found the Cerro Gordo Tuberculosis and Health Association was entitled to take one-fourth of the residuary estate under this provision of the will.

■ IV. *Cerro Gordo County Cancer Society of Mason City, Iowa.* There has never been an organization in Cerro Gordo County known by this name. There is one, however, whose proper name is American Cancer Society, Iowa Division, Inc. This association has a registered office in Mason

City, Iowa, and is devoted to raising funds there for cancer research.

The evidence established beyond dispute no other organization in Cerro Gordo County could reasonably qualify as the intended beneficiary of this provision. This organization performs the exact services for which testator intended to provide. It does so in the area to which testator's beneficence was limited by her will. The fact that she imperfectly named the charitable corporation should not invalidate the gift when it is shown with reasonable certainty that this is the only body meeting the conditions attendant to the gift. Again we agree with the trial court's conclusion that the American Cancer Society, Iowa Division, Inc. is entitled to a one-fourth interest in the residuary estate.

V. We should mention briefly that portion of decedent's will which requires that the property included in the residuary bequests be used "in the area served by [the residuary legatees] * * * and it is my intention that no part of any such bequest shall be paid into any national organization of which such local group or chapter may be a part, but shall be used in such manner only as may be determined by the local governing board of each of such groups or organizations."

Clearly, compliance with this provision of the will could be shown only by extrinsic evidence, and we do not understand the defendants question this rule. Plaintiff introduced testimony from officers of the three organizations involved that the money from Mrs. Meibergen's estate would be used exclusively in Cerro Gordo County. Defendants presented no evidence at all, either on this or any other question involved. The trial court found all of the organizations complied with the directive in decedent's will and that none of the gifts would be diverted to any national organization for use outside Cerro Gordo County. We agree that this specific condition will be satisfied by the organizations to which the money will now go.

For the reasons stated above we find that the decree of the trial court was correct and should be affirmed.

Affirmed.

All Justices concur.