## Lipman's Estate.

Argued November 29, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Simon Pearl,* with him *Harry A. Rutenberg,* for appellant.

*Maurice A. Nemirow,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, January 2, 1940:
The will we are called upon to construe was written in Yiddish, which it appears is not a language of exactitude. When written by one such as this testator, whose

gift does not seem to have been clarity in thought or understanding of meaning and intent, it meets difficulties.

The translation of the portion of the will with which we are called upon to deal, approved and found correct by the court below, reads: "Each child shall get $3,000 Barney shall get $500 not more because he is married . . . the mother shall not take a partner in the business Louis and Meyer shall conduct the business and the mother shall have the full power  The mother shall have the full say over everything  She shall have the full power over all  Meyer shall also have the full power in the say with the mother  Nothing should be divided while the mother lives  You shall stand together in the business all together . . . In the meantime as long as the mother lives the married son Barney cannot now get anything  As long as the mother lives no house shall be divided  Barney has received for his wedding  He cannot get anything  If you will sell the little houses the money shall not be divided  It shall lie in a bank wherever you want  The money lying in the bank shall not be divided . . ."

The auditing judge and the court in banc concluded that the part of the will quoted, which it is contended by appellant disposes of the residue of testator's estate, is unintelligible, that no disposition of the residuary estate is made and that there is an intestacy as to such portion of his property.

Taking the wording in its entirety, we think we can glimpse testator's meaning and intention with sufficient certainty to give effect to his purpose, which we believe was not to fail to provide for his widow at least for her life. He intended that distribution should not be made among his children so long as their mother lived, because he says, "Nothing should be divided while the mother lives" and "as long as the mother lives no house shall be divided." He does not clearly convey the idea that the son Barney should receive only $500.00 ulti-

mately. While he restricts his presently payable legacy to that sum, he goes on to say, "In the meantime as long as the mother lives the married son Barney cannot now get anything" meaning, as we take it, anything more than the $500.00 previously given, but on her death, he should share with the other children. All the others have assigned their interests in the estate to their mother, so the controversy is between her and Barney.

This is a situation where precedents are of no aid in construction. No will has a brother: *Williamson's Est.*, 302 Pa. 462, 153 A. 765. This one has no relations at all.

Our conclusion is that the widow takes a life estate in what is left after the payment of the specific legacies.

The decree is reversed, with directions to make distribution in accordance with this opinion. Costs to be paid by the estate.